AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

**FILED**

for the

Eastern District of Missouri

MAY **2 8** 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of the Search of

)
723 Spur Drive, Palmyra, Missouri 63461 ("Target Residence) )
is a single-family ranch style home with an attached garage. The front door of the )
residence faces west. The residence has brown brick and cream colored siding, a )
brown roof, and a brown front door. "723" is visible on the front of the residence )
near the front door.  The term "Target Residence" includes the attached garage. )

Case No.    4:19 MJ 1225 JMB

## APPLICATION FOR A SEARCH WARRANT

I, Eric M. Shelvy _____, a federal law enforcement officer or an attorney for the government
request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:
723 Spur Drive, Palmyra, Missouri 63461

located in the _____ EASTERN _____ District of _____ MISSOURI _____ , there is now concealed

### SEE ATTACHMENT A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 26, Section 5861(d) | possession of an unregistered machine gun |
| Title 26, Section 5861(i) | possession of a machine gun without a serial number |
| Title 18, Section 922(a)(1)(A) | importation of firearms |
| Title 18, Section 922(a)(4) | transportation of machine guns in interstate commerce |
| Title 18, Section 922(l) | importation of firearms; possession of unlawfully imported firearms |
| Title 18, Section 922(o) | transfer or possession of a machinegun |

The application is based on these facts:

### SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Eric M. Shelvy
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    5/28/2019

*Judge's signature*

City and state:  St. Louis, MO

Honorable John M. Bodenhausen, U.S. Magistrate Judge
*Printed name and title*

AUSA:  Jason Dunkel

# AFFIDAVIT FOR SEARCH WARRANT

## I.      Introduction

1.      I, Eric M. Shelvy, being duly sworn, depose and state that I have been employed as a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since April 2015, currently assigned to the Kansas City Field Division, St. Louis Group II Field Office. I am tasked with investigating violations of the federal arson, explosives, controlled substances, violent crime and firearms laws, among others.  I have successfully completed the Criminal Investigator Training Program (CITP) and the ATF National Academy Special Agent Basic Training (SABT) at the Federal Law Enforcement Training Center.  Prior to ATF, I was employed as Special Agent with the Bureau of Diplomatic Security U.S. Department of State and eight years as an Active Duty Marine.

## II.     Location to be Searched

2.      This affidavit is made in support of an application of a search warrant for the following premises:

### Target Residence

723 Spur Drive, Palmyra, Missouri 63461 ("**Target Residence**").  Target Residence is a single-family ranch style home with an attached garage. The front door of the residence faces west. The residence has brown brick and cream colored siding, a brown roof, and a brown front door. "723" is visible on the front of the residence near the front door.  The term "**Target Residence**" includes the attached garage.

A photograph of **Target Residence** is set out in **Attachment A**.

3.      The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses.  Because this affidavit is submitted for the limited purpose of establishing probable cause for the issuance of a search warrant, I have not included every fact known to me regarding this investigation.

1

4.      I believe there is probable cause to believe that there is now concealed in the location to be search contraband or other items which constitute the fruits of or evidence of unlawful activity, including but not limited to: firearms, books, records, receipts, notes, communications, ledgers and other papers which are contraband and/or evidence of crimes which include violations of: Title 26, Section 5861(d) (possession of an unregistered machinegun); Title 26, Section 5861(i) (possession of a machinegun without a serial number); Title 18, Section 922(a)(1)(A) (importation of firearms); Title 18, Section 922(a)(4) (transportation of machineguns in interstate commerce); Title 18, Section 922(l) (importation of firearms; possession of unlawfully imported firearms); Title 18, Section 922(o) (transfer or possession of a machinegun); Title 18, Section 545 (smuggling goods into the United States).  The items believed to be stored at **Target Residence** and that are to be seized are set out in full in **Attachment B**.

## III.    Criminal Statutes

5.      Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States.  As a result of my training and experience, I am familiar with federal laws including 18 U.S.C. § 922(a)(1)(A), which states:  It shall be unlawful for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

6.      In addition, I am familiar with 18 U.S.C. § 922(a)(4), which states:  It shall be unlawful for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, to transport in interstate or foreign commerce any destructive device, machinegun (as defined in section 5845 of the Internal Revenue Code of 1986), short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Attorney General consistent with public safety and necessity.

2

7.      I am also familiar with 18 U.S.C. § 922(l), which states:  Except as provided in section 925(d) of this chapter, it shall be unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition; and it shall be unlawful for any person knowingly to receive any firearm or ammunition which has been imported or brought into the United States or any possession thereof in violation of the provisions of this chapter.

8.      I am also familiar with 18 U.S.C. § 922(o), which states that it's unlawful for any person to transfer or possess a machinegun.

9.      I am also familiar with 26 U.S.C. § 5844, which states:  No firearm (the definition of which includes a machinegun) shall be imported or brought into the United States or any territory under its control or jurisdiction unless the importer establishes, under regulations as may be prescribed by the Secretary, that the firearm to be imported or brought in is – (1) being imported or brought in for the use of the United States or any department, independent establishment, or agency thereof or any State or possession or any political subdivision thereof; or (2) being imported or brought in for scientific or research purposes; or (3) being imported or brought in solely for testing or use as a model by a registered manufacturer or solely for use as a sample by a registered importer or registered dealer; except that, the Secretary may permit the conditional importation or bringing in of a firearm for examination and testing in connection with classifying the firearm.

10.     I am also familiar with 18 U.S.C. § 545(a), which states that it is unlawful to knowingly and willfully, with intent to defraud the United States, smuggle, or clandestinely introduce or attempt to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or to fraudulently or knowingly import or bring into the United States, any merchandise contrary to law, or receive, conceal, buy, sell, or in any manner

3

facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

11.     I am also familiar with 18 U.S.C. § 922(a)(1)(A), which states that it is unlawful for any person, except a license dealer, to engage in the business of dealing in firearms.

## IV.     Background Facts

12.     Based upon my training and experience, I am aware of Glock conversion devices (also known as Glock selector switches) that have been designed and created solely and exclusively to convert semi-automatic Glock pistols into fully automatic machineguns.   These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at approximately 1,200 rounds per minute.  Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device.  I also know that these devices are referred to by different names, including but not limited to switches, auto sears, convertors, conversion switches, selector switches, conversion devices, and Fire Selector Systems for Glock (FSSGs).

13.     ATF classifies Glock conversion devices as post-May 19, 1986, machineguns. Therefore, apart from official military and law enforcement use, Glock conversion devices may only be lawfully possessed by properly licensed Federal Firearms Licensees (FFLs) who have paid the appropriate Special Occupational Tax (SOT) required of individuals manufacturing, importing, or dealing in National Firearms Act (NFA) weapons, including machineguns.

14.     Federal law defines "machinegun" as:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. ***The term shall also include … any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun….***

4

26 U.S.C. § 5845(b) (emphasis added).

15.     I also know, based upon my training and experience, that with the proper knowledge, computer software, and machining equipment, individuals have the ability to manufacture both semi-automatic firearms and fully automatic machineguns from scratch.   These firearms can be manufactured with the use of lathes or computer numerical controlled (CNC) milling machines, which are digitally automated machining centers capable of cutting and fabricating solid materials including firearms parts.  With this type of equipment, a subject can manufacture firearms that perform as well as those created by FFL manufacturers, and can place on the firearms any type of markings, symbols, or serial numbers the subject desires.

16.     Based upon my experience in conducting criminal investigations of violations of federal firearm and ammunition laws, I know that firearm and ammunition trafficking organizations have developed a number of methods to insulate their illegal activities from law enforcement detection.  These methods are common to major firearm and ammunition trafficking organizations to varying degrees of sophistication.

17.     I know that illegal firearm and ammunition traffickers often utilize techniques to prevent the detection of firearms that are shipped unlawfully through mail and common carriers by means of falsifying invoices, bills of sale, shipping papers, and customs forms by listing the firearms as other items, including but not limited to firearms parts and pieces (rather than complete firearms) and components utilized in the automotive, industrial, and machinery industries.  In addition, illegal firearm traffickers have been known to conceal firearms inside of other objects to avoid detection by law enforcement officials.

18.     I know that another common technique of illegal firearm and ammunition trafficking activity is the use of latex and vinyl gloves by individuals handling firearms and ammunition while

processing packages for shipment.  This is done in order to prevent fingerprints from being left on items that could later be used as evidence against such individuals.

19.     I know, based upon experience, that one key indicator of illegal firearm and ammunition trafficking activity is the use of complex methods for ordering, paying for, and transferring the firearms, firearm components, and/or ammunition.  I know that illegal firearm and ammunition traffickers utilize payment methods that are often difficult to trace, which include utilizing U.S. currency, money orders, wire-transfers, PayPal accounts, and/or pre-paid credit cards held by different subjects. Illegal firearm and ammunition traffickers utilize these methods as a means of compartmentalization in order to minimize the ability for law enforcement officials to identify the original source of funds.

20.     I know that illegal firearm and ammunition traffickers often utilize cellular telephones that are held in the names of other living or fictitious persons, and change numbers frequently in order to limit law enforcement officials' ability to identify and track suspects' call histories.  In addition, I know that illegal firearm and ammunition traffickers often utilize computers and electronic storage devices to acquire, pay for, sell, transfer, and keep records of firearm and ammunition purchases and sales.  Firearm and ammunition trafficking organizations also utilize code words for quantities and types of firearms and ammunition that are being purchased, sold, and/or transferred in effort to avoid detection by law enforcement officials.

**V.      National Investigation**

21.     On October 31, 2018, ATF Special Agent (SA) A. J. Gibes of the ATF Internet Investigations Center located in Washington, D.C., received information from another ATF agent concerning the website CBTForce.com.  SA Gibes learned that the website appeared to belong to a Chinese company which advertised the sale of Glock conversion devices (machineguns).

22.     On November 1, 2018, SA Gibes reviewed the website CBTForce.com which advertised the sale of firearm related-items including a suspected Glock conversion device advertised as a "Glock Auto Switch."  During a review of the website, SA Gibes observed the following:

    a. The website had a "HOME" page which displayed a prominent advertisement for a "Glock Auto Switch" that depicted a suspected Glock conversion device.  The device was a push button version (which allows the shooter to select between semi-automatic and fully-automatic fire) and had the Glock logo and the words "Made in AUSTRIA" printed on it.

    b. In the "ALL PRODUCTS" section of the website, over 150 items predominately related to firearms were listed for sale.  Among those items were holsters, pistol sights, magazine holders, slings, and brass catchers.  SA Gibes observed that the first product on the list was the suspected Glock conversion device.

    c. The suspected Glock conversion device product was described as "Glock Pistols Select of switch Full Auto For All models Glock all Generations" [*sic*] and priced at $19.00.  The item had two color options, the first of which included the black push button version (with the Glock logo and "Made in AUSTRIA" printed on it) and the second of which was a silver push button version with the Glock logo printed on it.

    d. The product description section stated, among other things, that it fit "All models Glock all Generations," is "Easily installed and removed with no permanent modifications," and "He is suitable for the world most Glock" [*sic*].  In addition, directions on "How to install" the item included a link to a YouTube.com video which depicted how to install the device onto a Glock pistol.

    e. The sales advertisement included multiple customer reviews.

    f. The "CONTACT US" section of the website listed an e-mail address (umoneyboxsale@hotmail.com), a Facebook page CBTForce, and a Skype account, and displayed the PayPal logo.

23.     On the same date, SA Gibes noted that based upon a review of the product information and photographs, in conjunction with past training and personal experience in the matter, the two versions of the "Glock Auto Switch" listed for sale on the website were consistent with that of NFA weapons as they were machineguns.   SA Gibes noted that these type of items are subject to the provisions of the Gun Control Act (GCA) and the National Firearms Act (NFA), and cannot be purchased and shipped directly to the customer without violating Federal law.  In addition, once the

customer receives these items, he or she cannot then sell, transfer, or otherwise dispose of them to other individuals without violating Federal law.

24.     On the same date, SA Gibes acting in an online undercover capacity, ordered the following items from CBTForce.com:

a.  One "Glock Pistols Select of switch Full Auto For All models Glock all Generations" – black, for the price of $19.99;

b.  One "Glock Pistols Select of switch Full Auto For All models Glock all Generations" – silver, for the price of $19.99.

25.     PayPal records reflect that the payment was sent to a PayPal account named "JIGNWEIYIDA" using the email qingxiaobo@hotmail.com.  Subsequent investigation revealed that the CBTForce.com website is operated by Xiaobo Qing and Tao Linli in Shenzhen, in the Guandong province of China.

26.     On January 5, 2019, both packages (China Post / U.S. Postal Service Tracking # LN691499430CN and # LW055613201CN) which were originally shipped by CBTForce.com from China to the aforementioned undercover mailbox located in Tucson, Arizona, were successfully delivered.

27.     On January 7, 2019, ATF SA Matt Bayer successfully retrieved both packages (China Post / USPS Tracking # LN691499430CN and # LW055613201CN) from the undercover mailbox in Tucson, Arizona.   SA Bayer also advised SA Gibes that he examined the exterior of the packages and observed that they were sealed and did not exhibit any signs of tampering.

28.     Packaging showed the packages were sent by "Taozhengming" (potentially a Tao Zheng Ming), from Shenzhen, in the Guandong province of China.

29.     On January 11, 2019, SA Gibes received the packages (China Post / USPS Tracking # LN691499430CN and LW055613201CN) and observed that they were still sealed and exhibited no signs of having been opened or tampered with.  On the same date, both packages were opened and

examined.     The first package (Tracking # LN691499430CN) contained two suspected Glock conversion devices.  One suspected Glock conversion device was black and marked in white with the Glock logo and the words, "Made in AUSTRIA."  The other suspected Glock conversion device was silver and marked in white with the Glock logo.  The second package (Tracking # LW055613201CN) also contained two suspected Glock conversion devices. One suspected Glock conversion device was black and marked in white with the Glock logo and the words, "Made in AUSTRIA."  The other suspected Glock conversion device was silver and marked in white with a Glock logo.  The markings present on both black Glock conversion devices (logo, font type, and capitalization) were inconsistent with that of a true Glock logo used by Glock, G.m.b.H, and Glock, Inc.  Based upon previous communication with representatives of Glock, Inc., the company has never produced an aftermarket Glock conversion device in Austria or anywhere else in the world.  In addition, none of the four devices contained a serial number, which is required to be present on all machineguns under federal law.

30.     On the same date, SA Gibes observed that both packages failed to properly identify the contents as in any way related to Glock conversion devices or machineguns.  Additionally, SA Gibes noted that the shipper had falsified each Customs Declaration Form to reflect that the contents consisted of a "Multitool switch" and "Handcrafted Finished Pieces" (presumably in effort to successfully smuggle the packages into the United States).

31.     On January 31, 2019, the four suspected Glock conversion devices were shipped to the ATF Firearms Technology Criminal Branch for examination, test-firing, and classification.

32.     On February 8, 2019, SA Gibes received and reviewed a report from the ATF Firearms Technology Criminal Branch which revealed, among other things, the following:

a. In regards to the four suspected Glock conversion devices that were purchased from CBTForce.com, ATF Firearms Enforcement Officer (FEO) Gregory Stimmel observed that all four devices were modified Glock-type slide cover plates that incorporate a selector switch and a

9

metal leg which is designed and intended to convert a semi-automatic Glock-type pistol into a machinegun. FEO Stimmel also observed that all four devices had a Glock logo marking and that two of them had "MADE IN AUSTRIA" also marked on them. FEO Stimmel noted that while the items were marked as such, they are not manufactured by Glock.

b. On February 7, 2019, FEO Stimmel installed one of the suspected Glock conversion devices onto a Glock model 17 9mm Luger semi-automatic pistol obtained from the ATF National Firearms Collection. FEO Stimmel then test-fired the firearm with the device installed on it multiple times using Winchester brand 9mm Luger ammunition. FEO Stimmel observed that with the device installed, the firearm functioned each time by firing multiple rounds automatically with a single function of the trigger.

c. FEO Stimmel repeated the same process for the remaining three suspected Glock conversion devices by test-firing each installed on a Glock model 17 9mm Luger semi-automatic pistol obtained from the ATF National Firearms Collection. During each test, FEO Stimmel fired the firearm with a device installed multiple times using Winchester brand 9mm Luger ammunition. FEO Stimmel observed that with each of the devices installed, the firearm functioned by firing multiple rounds automatically with a single function of the trigger.

d. FEO Stimmel concluded that each of the four Glock conversion devices were a combination of parts designed and intended solely and exclusively for converting a weapon into a machinegun, and therefore was a "machinegun" as defined in 26 U.S.C. § 5845(b) and 18 USC § 921(a)(23). In addition, none of the four Glock conversion devices bore a serial number as required by 26 U.S.C. § 5842.

33. On February 28, 2019, SA Gibes reviewed the website CBTForce.com and observed that it continued to display suspected NFA weapons, including Glock conversion devices, for sale to the general public.

34. On March 6, 2019, ATF agents obtained search warrants for the email and PayPal accounts associated with CBTForce.com. The PayPal account search warrant was served on the same date, and as a result of the information provided by PayPal pursuant to the search warrant, agents identified a number of individuals who had purchases Glock conversion devices from CBTForce.com.

## VI.    Eastern District of Missouri Investigation

35.    Subsequent investigation determined that five (5) Glock conversion devices were purchased using internet accounts associated with Christopher WALOTKA (w/m, DOB: XX/XX/1980, SSN: XXX-XX-4089).

36.    On December 20, 2018, WALOTKA purchased one (1) Glock conversion device as well as other firearms related accessories for a combined total of $43.99.  The Glock conversion device was shipped from China to WALOTKA at the **Target Residence** via China Post / U.S. Postal Service (Tracking No. LW053316245CN).  The device was successfully delivered on January 15, 2019.

37.    On January 16, 2019, WALOTKA purchased four (4) Glock conversion devices as well as other firearms related accessories for a combined total of $133.95.  I have been unable to locate shipment tracking records for this order.

38.    Based on my training and experience, the fact that WALOTKA purchased four additional Glock conversion devices the day after the first shipment was delivered indicates that WALOTKA received the devices on January 15, 2019, and subsequently desired to purchase additional devices.  The fact that the WALOTKA increased the number of devices ordered indicates that the second purchase was not intended to replace the original shipment, but is indicative that the purpose of the original shipment was to test the Glock conversion devices.

39.    These purchases were made using a PayPal account associated with the email address chris_walotka@hotmail.com.

40.    An inquiry into the utilities at the **Target Residence** revealed the account holder to be WALOTKA.

41.    A query of Missouri Department of Revenue records revealed the following vehicles registered to WALOTKA, and registration records show that WALOTKA used the **Target Residence** as the registered address:

- 2010 White Ford F-150 Missouri Registration 2UC-891
- 2004 Gold Pontiac Grand Prix Missouri Registration CD8-D2F

42.    A criminal history inquiry of WALOTKA revealed negative results.

43.    WALOTKA is not a Federal Firearms Licensee.

44.    Per ATF National Tracing Center Multiple Sale Summary WALOTKA has purchased at least thirty seven (37) firearms included in twelve (12) multiple sales from Single Action Armory in Hannibal, Missouri since 2014 and as recently as April 20, 2019.  On all 12 multiple sale reports, WALOTKA listed the **Target Residence** as his address.  Among the firearms purchased numerous Glock pistols were included.  The Glock conversion device purchases, modifies any model of Glock firearms, and therefore will be able to modify the Glock firearms purchased by WALOTKA.

45.    The recent purchase of multiple firearms as recently as last month indicates that WALOTKA still has firearms in his possession and has not discontinued purchasing and collecting firearms.

46.    In my training and experience, individuals who purchase firearms in the quantities that WALOTKA has purchased firearms is indicative of a firearms collector who purchases and collects firearms for long-term possession.

47.    In my training and experience, the amount of firearms purchased is indicative of a person who is an avid collector and/or trader of firearms.

48.    In my training and experience, individuals who purchase these amounts of firearms are knowledgeable about firearm laws and the prohibition on automatic weapons.

12

49.     Since the investigation into CBTForce.com began, it appears that the operators of CBTForce.com have created a new website, similarly spelt, using the domain www.CBTForces.com.

50.     Based on my training, experience and knowledge, there is probable cause to believe that the **Target Residence** contains Glock conversion devices, machineguns, and/or evidence of the purchase, importation, transfer, and possession of machineguns as detailed in Attachment B.

**VII.   Computers, Electronic Storage Media, and Forensic Analysis**

51.     The term "computer" as used herein is defined in 18 U.S.C. § 1030(e)(1), and includes an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

52.     Based on my training, experience and knowledge, and information provided to me by other agents who specialize in computer forensics, I know the following:

a.  The internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities.  In order to access the internet, an individual computer user must subscribe to an access provider, which operates a host computer system with direct access to the internet.  The world wide web ("www") is a functionality of the internet which allows users of the internet to share information;

b.  With a computer connected to the internet, an individual computer user can make electronic contact with millions of computers around the world.  This connection can be made by any number of means, including modem, local area network, wireless, and numerous other methods; and

c.  E-mail is a popular form of transmitting messages and/or files in an electronic environment between computer users.  When an individual computer user sends e-mail, it is initiated at the user's computer, transmitted to the subscriber's mail server, and then transmitted to its final destination.  A server is a computer that is attached to a dedicated network and serves many users. An e-mail server may allow users to post and read messages and to communicate via electronic means.

53.     Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic data that

identify any users of the subject account(s) and any electronic messages sent or received in temporal proximity to incriminating electronic messages that provide context to the incriminating messages.

54.     All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

**VIII.   Conclusion**

55.     Based on the foregoing, there is probable cause to believe that 723 Spur Drive, Palmyra, Missouri 63461, further described and identified in Attachment A, contains evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 922(a)(1)(A),  922(a)(4), 922(l), 922(o), and 545(a), and 26 U.S.C. § 5844, as set out in Attachment B.

56.     The statements made in this affidavit are based on the personal observations and investigation conducted by me, and information communicated or reported to me during the investigation by other participants in the investigation, as the content of this affidavit indicates. This affidavit is intended to show that there is probable cause for this search warrant and does not purport to set forth all information and knowledge obtained by me during this investigation.

Further affiant sayeth not.

I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

Eric Shelvy Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SUBSCRIBED and SWORN to before me this ____ day of May, 2019.

THE HONORABLE JOHN M. BODENHAUSEN
United States Magistrate Judge
Eastern District of Missouri

15

## ATTACHMENT A

### Target Residence

723 Spur Drive, Palmyra, Missouri 63461 ("**Target Residence**"). Target Residence is a single-family ranch style home with an attached garage. The front door of the residence faces west. The residence has brown brick and cream colored siding, a brown roof, and a brown front door. "723" is visible on the front of the residence near the front door. The term "**Target Residence**" includes the attached garage.



**723 Spur Drive, Palmyra, Missouri 63461**

**ATTACHMENT B**

**Items to be Seized**

Any and all items which constitute evidence, fruits, and instrumentalities of violations of

Title 26, Section 5861(d) (possession of an unregistered machinegun); Title 26, Section 5861(i)

(possession of a machinegun without a serial number); Title 18, Section 922(a)(1)(A) (importation

of firearms); Title 18, Section 922(a)(4) (transportation of machineguns in interstate commerce);

Title 18, Section 922(l) (importation of firearms; possession of unlawfully imported firearms); Title

18, Section 922(o) (transfer or possession of a machinegun); Title 18, Section 545 (smuggling

goods into the United States), including but not limited to the following:

1.      Machineguns, as defined by 26 U.S.C. § 5845(b) and including Glock conversion

devices (Glock selector switches) capable of modifying semi-automatic firearms into automatic

firearms;

2.      Firearms, ammunition and/or other weapons;

3.      Records pertaining to the importation, smuggling, or transfer of firearms, including

machineguns and selection switches;

4.      Records pertaining to the purchase, sale, receipt, shipment, or delivery of firearms,

including machineguns and selection switches;

5.      Records pertaining to the use, purpose, design, or function of firearms, including

machineguns and selection switches;

6.      Records pertaining to the installation of selection switches;

7.      Records pertaining to CBTForce.com, CBTForces.com,

umoneyboxsale@hotmail.com, qingxiaobo@hotmail.com, Xiaobo Qing, Tao Linli, or Tao Zheng

Ming;

8.      Records pertaining to packages received from Shenzhen, Guangdong Province,

China;

      9.      Records showing ownership, control, use, or access to chris_walotka@hotmail.com, or PayPal accounts linked to chris_walotka@hotmail.com;

      10.     Computers, iPads, tablets, and smartphones capable of accessing the internet;

      11.     Records of computer and internet use related to:

      a.   cbtforce.com and/or cbtforces.com;

      b.   umoneyboxsale@hotmail.com and/or qingxiaobo@hotmail.com;

      c.   chris_walotka@hotmail.com;

      d.   PayPal.com;

      e.   The purchase, use, and installation of Glock conversion devices;

      f.   YouTube.com videos related to Glock conversion devices;

      g.   Automatic firearms, and the conversion of semiautomatic firearms to fully automatic firearms; and

      h.   Glock firearms.

      12.     Records pertaining to communication between subjects, transportation and shipping arrangements and information, instructions, order lists, invoices, research, financial arrangements, payment methods, and other logistical aspects related to the manufacture, purchase, sale, transfer, illegal importation, trafficking, and/or smuggling of machineguns;

      13.     Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing and distribution of firearms;

      14.     Photographs, in particular photographs of co-conspirators, of assets, and/or of firearms;

      15.     Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank

2

checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets

and the obtaining, secreting, transfer, concealment and/or expenditure of money;

16.     Papers, tickets, notes, schedules, receipts and other items relating to travel or

transportation, including, but not limited to, travel;

17.     Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or

premises described in the accompanying affidavit, including, but not limited to, utility and

telephone bills, cancelled envelopes, rental or lease agreements and keys;

18.     Security systems, cameras, cables, recording devices, monitors, cellular telephones

and other video surveillance equipment.

### Definitions

As used above, the terms "records" and "information" include all of the foregoing items of

evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as hard disks and flash memory or other storage

medium that can store data); any handmade form (such as writing); any mechanical form (such as

printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides,

negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or

other high speed data processing devices performing logical, arithmetic, or storage functions,

including desktop computers, notebook computers, mobile phones, tablets, server computers, and

network hardware.

The term "storage medium" includes any physical object upon which computer data can be

recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other

magnetic or optical media.